FONTAINE CROSSING & ELECTRICAL CO. v. RAUCH.

1. AGENCY—HOW PROVED—DECLARATIONS.
   A person's authority to act as another's agent cannot be shown by his own declarations.

2. SAME—QUESTION FOR JURY.
   The question whether certain correspondence and subsequent dealings show agency is for the jury, where reasonable minds might differ in regard thereto.

Error to Newaygo; Palmer, J. Submitted April 26, 1898. Decided June 28, 1898.

*Assumpsit* by the Fontaine Crossing & Electrical Company against Henry S. Rauch and another, copartners as H. S. Rauch & Bro., on promissory notes. From a judgment for plaintiff on verdict directed by the court, defendants bring error. Reversed.

*A. F. Tibbitts* (*Martin Rozema*, of counsel), for appellants.

*W. D. Fuller* (*L. C. Stanley*, of counsel), for appellee.

HOOKER, J. Upon the conclusion of the testimony offered upon behalf of the defendants, the court directed a verdict for the plaintiff, upon the ground that the evidence was insufficient to justify a finding by the jury that Benjamin was the plaintiff's agent, which was necessary to the defense sought to be made. Error is assigned upon the charge.

The action was brought upon some promissory notes made by the defendants, payable to the order of the Electrical Outfitting Company, and indorsed in the name of said company by E. O. Benjamin, treasurer. By way of defense, the defendant Henry S. Rauch testified that the

defendants were engaged in furnishing electric light in White Cloud, and that Benjamin was at his place in August, 1895, to sell him a dynamo, and that "he claimed to be representing the plaintiff in this case, as its agent." The witness stated further that an oral agreement was then and there made for a new dynamo, for which the defendants were to pay $680, of which $300 was to be cash, to be paid after 30 days' trial. He stated further that Benjamin said that he would put part of the bargain in writing, so that the factory could go to work on the machine at once, when he got home, and that he would make two contracts, typewritten, and send them to defendants to sign. This memorandum was signed by the defendants, but not by Benjamin, and was not produced. Soon after, the defendants received a writing from Benjamin, as follows:

"ELECTRICAL OUTFITTING CO.,
"Manufacturers' Agents.
"Dealers in
"Dynamos, Motors, Combination Ventilating Fans, etc.
"Estimates for Complete Lighting Plants.
"Office, 194 Griswold street.
"DETROIT, MICH., August 15, 1895.
"Messrs. H. S. RAUCH & BRO.,
"White Cloud, Mich.

"*Gentlemen:* We propose to furnish you one 500-light dynamo, etc., manufactured by the Fontaine Crossing & Electrical Co. [Here follow specifications of machine, guaranty, and amount of price and manner of payment.]
"Respectfully submitted.
"ELECTRICAL OUTFITTING CO.,
"E. O. BENJAMIN, Treas. & Manager."

No response appears to have been made to this, and after a time the machine was delivered.

Considerable correspondence passed between the defendants and the Electrical Outfitting Company. On September 10th, the Outfitting Company wrote to the defendants, explaining a delay, and saying, "If you intend sending your old machines to us for sale, do so as

soon as you can, as we have places in view where we think we can sell them;" and it is apparent from the correspondence that they were sent to the Outfitting Company. On October 3, 1895, the Electrical Outfitting Company wrote that, "We inclose you bill for dynamo, along with the three notes;" asking signature, and a remittance of check for $300, with the notes. On October 5th defendants reply, in a long letter, complaining of a failure of the machine to work, and expressing a willingness to settle as soon as the machine should work according to contract. Thereupon Benjamin wrote that he would go to White Cloud and see about it, and he did so; and upon his representation that the manufacturer was responsible, and would certainly make the machine all right, a check for $300 was given, and the notes were signed and delivered to Benjamin. Other correspondence was had about the old machines as late as October 28th. On November 8th the defendants began a correspondence with the plaintiff. Their first letter says: "We are sorry to say that the machine bought through your agent, Benjamin, does not give satisfaction." After a description of the working of the machine, the letter concludes: "Please advise us what course you will pursue, at once." Plaintiff, by Mr. Fuller, answered, saying: "I have just been talking with Mr. Benjamin," etc. "I would say that I always endeavor to please purchasers of our machinery, and would like to do so in this case, and have, at our expense, sent Mr. Benjamin to your mill on two different times." The letter also contained a proposition to send a man to instruct defendants, at their expense if the machine should work well, and, if not, at the plaintiff's expense. A man was sent on one or two occasions, and finally another and larger machine was sent, as the result of a long correspondence, of which the following letters were part:

"January 13, 1896.
"H. S. RAUCH & BRO.,
        "White Cloud, Mich.
    "*Gentlemen:* On the return of our Mr. Rumsey, we

are informed you desire us to make a price on a 25 K. W. 250-volt dynamo; also, on a 25 K. W. 125-250 volts or double machine. We will exchange you a 250-volt machine for the one you now have at 116 volts; you paying freight on machines. That is, we deliver 250-volt machine f. o. b. cars Detroit; you deliver 116-volt machine to us f. o. b. cars Detroit. If you desire a double-voltage machine, we will exchange for the one you now have on the same conditions as above; you paying us $50 extra on this type of machine.

"In this matter, you understand, we supplied you with just what we were ordered to build; that is, an ordinary lighting machine. Our knowledge of what sort of wiring you had in service was not in question with us, as we simply built to order, on contract. Whatever verbal conversation you had with Mr. Benjamin relating to your distribution of current was entirely unknown to this company. You, of course, understand that, if a boiler-maker got an order for a boiler to sustain 125 pounds of steam, it would not be the correct thing to attempt to carry 250 pounds of steam on such a boiler. In other words, you must know that—When you contracted for a dynamo, you certainly, with your knowledge of electricity, must have known what voltage you ordered on contract. Please let me hear from you in regard to which machine you require.

"Yours truly,<br>
"R. FULLER."

"WHITE CLOUD, Jan. 15, 1896.

"FONTAINE CROSSING & ELECTRICAL CO.,
"Detroit.

"*Gentlemen:* Yours of 13th at hand. In answer to same, you make us propositions on 2 machines. We wish to know if the 25 K. W. 250-volt machine is made of steel, or cast iron. Also, what heft the machine is, and what speed it must run at full load. Also, can you guarantee the proposed machine to not heat or spark, to do damage to commutator, or cause melting out of any parts of same? Also, is the proposed machine double compound wound, automatic in its adjustments from one light to full load if speed of dynamo is regular? Please advise at once.        Yours respectfully,

"H. S. RAUCH & BRO."

"January 16, 1896.

"H. S. RAUCH & BRO.,
          "White Cloud, Mich.

"*Gentlemen:* In reply to yours of the 15th inst.: We will supply the 250-volt 25 K. W. machine as stated in my letter of the 13th inst. This machine is cast iron, and its weight is from 3,500 to 3,900 lbs. The machine will be compound wound, and automatic in its action under any load, providing the revolutions of its armature are kept constant. The machine we guarantee to operate without undue heating or sparking, when operator properly adjusts its brushes, and keeps the same clean. The speed of this machine is from 1,200 to 1,400 revolutions per minute, as it is impossible to state the exact speed of machinery that is automatic until such machine is built and tested.

"In relation to a machine being double compound wound: This is only done in case of a double-voltage machine. If you require a double-voltage machine, our price, as before stated, will be $50 extra. Of course, you understand, if you use a double-voltage with your present wiring, the service would be 250 volts; but at any future time you can put in a neutral wire, and distribute current on three wires.                           Yours truly,
                           " R. FULLER."

"WHITE CLOUD, MICH., Jan. 20, 1896.
"FONTAINE CROSSING & ELECTRICAL CO.,
                           "Detroit, Mich.

"Yours of Jan. 16th at hand. In answer to same, we wanted one of your steel frames; but as we have been to a great loss and expense, as well as yourself, we will do this: You deliver f. o. b. cars Detroit the proposed dynamo as stated in your letters Jan. 13, 16, to take the place of the one we now have. We will, on installing the one you ship us, deliver f. o. b. cars White Cloud the one we now have. We pay freight on the one we receive; you pay freight on the one you receive. * * *
                    "Yours respectfully,
                           "H. S. RAUCH & BRO."

"DETROIT, MICH., January 28, 1896.
"H. S. RAUCH & BRO.,
          "White Cloud, Mich.

"*Gentlemen:* I was very much surprised to receive your letter of the 26th, and in reply would say I am inclined to think you misunderstood your informant, in regard

to my stating your letters to me were ' bluffs,' as you call it; nor do I for a moment question your credit, as I made myself acquainted with your standing before any machine was ever sold to your firm.   I do not blame you for not being satisfied with the manner your machine is working on the distributing wires from it, as I understand you purchased one machine, and wanted altogether another kind of current from the one you are now supplying, although you thought you were purchasing right, and we thought we were building right, which we did do according to contract received from Mr. Benjamin.   We now have found we were misled, and I, for one, have been trying to straighten the matter out, and have under way a 25 K. W. 250-volt machine for you, and hope to ship the same next week. . I am inclined to think the trouble is caused by your listening to too many people that can always be found ready to give unsolicited advice, and those inclined to attend to other people's business rather than their own. Would it not be better to have more confidence in our personal transactions ?   I propose to satisfy you, and not all of Northern Michigan, as I do not like to have any of my machinery misrepresented;  and, if a mistake has been made, I want to make it right, and will do so.   In regard to the machine you are now running, I would say, if your distributing current was of low resistance for 125-volt service, the machine is all right, and will do the work it was sold for by us; but it will not do on 250-volt service.

"In  regard  to other people requiring machines of larger units up north,  I would be very glad to sell machinery to them, but not until after you are satisfied; nor would I care to send an agent to sell such machinery, after my experience at White Cloud, as it is not my custom to deceive purchasers, and I propose to give a man the best kind of machine for the particular service required by him, when I make a personal sale, and I have always instructed agents to be very particular in regard to such matters, and find it hard work to hold them down where they belong in some cases.   I suppose you find the same trouble in having your agents sell flour, as I understand that a flour that makes good bread does not always make good pastry, and it would be poor policy for a salesman to claim too much in one barrel.   For my part, I want you satisfied, and understand I was to send you a 25 K. W. 250 machine.   Am I right?                        Yours truly,
                                "R. FULLER."

"DETROIT, MICH., March 2, 1896.

"Messrs. RAUCH BROS.,
          "White Cloud, Mich.

"*Gentlemen:* Inclosed bill of lading for 25 K. W. 250-volt machine. If you will let me know when you are ready to put this machine in service, I will send our man, Mr. Rumsey, to White Cloud, to start the machine and see it is in proper running order, which course will, I think, be more satisfactory all around, as there may be some information you may require; and we are anxious to have everything go off all right, that all may be pleased.                    Yours truly,
                              "R. FULLER."

"WHITE CLOUD, March 7, 1896.

"FONTAINE CROSSING & ELECTRICAL CO.,
                    "Detroit, Mich.

"*Gentlemen:* Inclosed find shipping receipt for the dynamo shipped you in place of one received. We have been running it two nights, and are very much pleased with its workings. You may at any time refer to us any one in doubt as to your machines; also, send any one you wish to us, and we will do all in our power to show up the good qualities your machine has over others. If at any time we can do you a friendly act in any way, you may rest assured we will. We thought there was no use of having your firm go to the expense of sending your Mr. Rumsey to install the dynamo, as the writer has some little knowledge of electrical machinery, and has the machine installed and working satisfactory so far. We find this machine on our line takes care of the drop in line as lamps are cut on. If we do not allow the speed to vary, it gives a bright and white light at same voltage as on other machine. We cannot praise it too highly. Wishing you all the success the world can afford you, you may depend on us being with you.
          "Yours respectfully,
                    "H. S. RAUCH & BRO."

"March 10, 1896.

"H. S. RAUCH & BRO.,
          "White Cloud, Mich.

"*Gentlemen:* I received your kind letter of March 7th, and am pleased to learn you have the new machine in operation, and it is doing its work in accordance with what you ought to have had done in the first place. * * *
          "Yours truly,
                    "R. FULLER."

"March 10, 1896.

"H. S. RAUCH & BRO.,
        "White Cloud, Mich.

"*Gentlemen:* Our Mr. Fuller has informed me that the 250-volt 25 K. W. machine is now in service, and running to your satisfaction. Will you be kind enough to send us your check covering your first note, with interest, amounting to $129.33? We might add that we paid $1.29 protest fees on this note; but, of course, owing to the unsettled condition of your apparatus, and as Mr. Benjamin was to a very great extent, if not wholly, to blame for this, we will charge the protest fees to his account, and not yours.

            "Yours very truly,
                "JOHN THOMPSON, Sec'y & Treas."


                "DETROIT, MICH., March 18, 1896.
"H. S. RAUCH & BRO.,
        "White Cloud, Mich.

"*Gentlemen:* Our treasurer, Mr. Thompson, wrote you, March 10th, asking you if you would be kind enough to send us check for $129.33. As we have heard nothing from you in reply to our request, I take the liberty of again asking if you will remit this amount, as we are finding collections very hard, and have large pay-rolls; consequently, must have remittances. If you can send us check by return mail, it will be considered a great favor.

                "Yours very truly,
                    "R. FULLER."


                "WHITE CLOUD, MICH., March 20, 1896.
"FONTAINE CROSSING & ELECTRICAL CO.,
                    "Detroit, Mich.

"*Gentlemen:* Inclosed find statement of expense and delay of first dynamo; also, the price of Simpson machine, which was to apply on our account. We supposed the Electrical Outfitting Co. had turned this over to you before now. If statement is allowed, we will waive further damages against your firm, and look to the Electrical Outfitting Co. for other damages.

            "Yours respectfully,
                "H. S. RAUCH & BRO.
                    "H. S. R.

"FONTAINE CROSSING & ELECTRICAL CO., Detroit, in Account with
H. S. RAUCH & BRO.

| | |
|---|---|
| 1 Simpson dynamo | $87 00 |
| Freight on first | 23 56 |
| Expense unloading and installing first dynamo | 25 00 |
| Loading same | 20 00 |
| 15 days' loss on track | 45 00 |
| Loss on C. H. Mehrtens' contract | 75 00 |
| Expense of an attorney, Detroit | 40 00 |

$315 56"

"DETROIT, March 23, 1896.
"H. S. RAUCH & BRO.,
"White Cloud, Mich.

" *Gentlemen:* Your favor of the 20th, with statement, received. All the items in the statement are matters between you and the Electrical Outfitting Co. If they are a claim at all, they are against that company. We have nothing to do with any of these matters. In the course of business, we bought your notes of $380, bearing interest, and we hold them against you. We shall expect payment, and, unless the first one is paid by April 1st, we will begin suit on it. Yours truly,
"R. FULLER."

This action was then brought on the notes. Upon the trial the defendants sought to recoup damages as per the bill rendered.

The evidence alleged to show an agency is the following:

1. The representation of Mr. Benjamin.
2. The failure to deny that the defendants had bought a dynamo through the plaintiff's agent, Benjamin, in the answer to defendants' first letter.
3. The statement of plaintiff that it had twice sent Benjamin to White Cloud, at its expense, to adjust that machine.
4. The defendants' statement in letter of November 27th "that the machine must work different from what it does, if we keep it;" and the following, contained in the same letter: "We would further say: You send a good man up, and if he can run the dynamo all right, without armature and commutator overheating more than the fields,—also, keep brushes from sparking,—we will stand the expenses, as stated in your letter of November 11th;

and, should he fail to do so, you must stand the expenses, fix the machine, or refund our money, and expense of putting same in, at once. All we ask is to have value received for what we paid our money for."

5. The following statements found in letter of December 9th written by plaintiff: "I am sorry Mr. Benjamin ever went to White Cloud to start your machinery; but as this man has been in the electrical trade several years, and has done well on plants heretofore, I quite naturally supposed he would make no statements but those that were perfectly correct, as I am very particular in regard to such matters, and endeavor in every way to fully satisfy my customers, and have never before had any differences with any customer that we have sold machinery to. * * * In relation to our machine, again, we realize our future business, to a great extent, depends entirely on building first-class construction of machinery. We have never had a machine thrown out of service, and do not want a machine running that does not fully satisfy its owner, and will stand by our machine, even if it costs us more than the price of the machine. * * * We want to please you, and will use every endeavor to do so. I am sorry Mr. Benjamin was antagonistic to supplying you information. At any time you wish, write us, and we will be only too glad to answer questions."

6. Letter of December 10th, as follows: "As I wrote you yesterday, if you will be kind enough to have a little patience, now that we have had a practical man examine into the cause of your trouble, we will make the machine right, and only ask you to give us a chance outside of your experience with Mr. Benjamin. We want to do what is right, and will do so, if you will only have a little patience, and give us a chance."

7. The statement that plaintiff did not question defendants' credit, as "I made myself acquainted with your standing before any machine was ever sold to your firm. * * * You thought you were purchasing right, and we thought we were building right, which we did do, according to contract received from Mr. Benjamin. * * * If a mistake has been made, I want to make it right, and will do so."

8. The following: "In regard to other people requiring machines of larger units up north, I would be very glad to sell machinery to them, but not until after you are satisfied; nor would I care to send an agent to sell such machin-

ery, after my experience at White Cloud, as it is not my custom to deceive purchasers, and I propose to give a man the best kind of machine for the particular service required by him, when I make a personal sale, and I have always instructed agents to be very particular in regard to such matters, and find it hard work to hold them down where they belong in some cases.    I suppose you find the same trouble in having your agents sell flour, as I understand that a flour that makes good bread does not always make good pastry, and it would be poor policy for a salesman to claim too much in one barrel.    For my part, I want you satisfied, and understand I was to send you a 25 K. W. 250 machine.    Am I right?"

From this the defendants contend that the jury might find that the contract was made by the plaintiff through its agent, Benjamin, while the plaintiff maintains that all that was written or done by the plaintiff was consistent with the theory that the Electrical Outfitting Company was the contracting party, and that the plaintiff was not, and that plaintiff's efforts to satisfy the defendants do not necessarily recognize any contract obligation to do so, but merely a desire to protect its own business interests by satisfying purchasers of its machines.

It is obvious that the statements of Benjamin do not prove his agency; but we think that the correspondence and subsequent dealings raise a question about which minds might differ, and therefore it was for the jury.    We do not wish to be understood as expressing an opinion upon the merits of this question, but only that it is a question of fact.

It follows that the judgment must be reversed, and a new trial ordered.

The other Justices concurred.